## 19667

J. L. McLEOD et al., Respondents, v. Grover C. McNAIR et al., Appellants

(198 S. E. (2d) 222)

*Messrs. Burroughs, Green & Sasser,* of Conway, *for Appellants,* cite:

*John C. Thompson, Esq.,* of Conway, *for Respondents,* cites:

July 31, 1973.

BRAILSFORD, Justice:

This action was brought by plaintiffs who seek to build a motel in Myrtle Beach on their three adjacent oceanfront lots in a residential subdivision laid out in the late 1930's by Ocean Forest, Inc., and conveyed by it in gross to Highlands, Inc., the developer. By their amended complaint, plaintiffs seek a declaratory judgment that their lots are excepted from the restrictions predominantly applicable in the subdivision, hence, may be used for this purpose. Originally, plaintiffs sought relief from the restrictions solely on the ground of change in the character of the neighborhood. The case was referred to the master for Horry County, who recommended that relief be granted to plaintiffs on those grounds asserted.

The circuit judge adopted the master's conclusion that the lots in question were "A" lots within the meaning of an exception to the original restrictions and granted judgment accordingly. The sole issue on this appeal is whether these lots were within the exception relied upon when conveyed by the developer or whether they were, and are, restricted to use as residential lots.

We quote in relevant part the covenants contained in the deed from Ocean Forest, Inc. to Highlands, Inc., and incorporated into the deeds from the latter to plaintiff's predecessors-in-title:

"Said property is conveyed subject to the covenants, restrictions and limitations hereinafter set forth; and where reference is made to lots it shall be taken to refer to lots as shown on plat made by T. M. Jordan, C. E., dated March 15, 1938, and recorded in the office of the Clerk of Court for Horry County, South Carolina, Plat Book 2, at page 88, showing the subdivision of the above described property, and it is further stipulated and agreed that any deed or deeds made by the grantee, its Sucessors or Assigns, to any lot or lots in the above described area shall contain the same covenants, restrictions and limitations, to-wit:

"(1) The property hereby conveyed shall be used for residential purposes only, and in no instance shall it be used for erection or maintenance of any barn, stable, store, shop, factory, hennery, piggery, sanitarium, public garage, boarding house, hotel or apartment house, or for the conduct thereon of any mercantile business of any description, and provided, however, *it is expressly understood that the grantor may waive or fail to require this restriction as to boarding houses, hotels or apartment houses on any lot marked 'A' on the plat* made by T. M. Jordan, dated March 15, 1938, and that lots 1 to 9 in Block 31 are expressly excepted from the terms of this paragraph and may be used for any legitimate business purpose."

The plat referred to is a blueprint of the surveyor's original tracing, which was pasted bodily in Plat Book 2, at Page 88, as the recorded plat. The original tracing was not accounted for, and the master found that the recorded blueprint is the controlling map, by which the lots conveyed by the developer were identified. No one disputes this conclusion.

Although no showing has been made, or attempted, that the developer has waived the residential only restriction as to the lots in question, plaintiff's claim, and have been awarded, the benefit of the exception created by the italicized words in the quoted excerpt from the covenants. We think it abundantly clear from the plat and the deeds out of the developer that plaintiff's lots are not eligible, with or without the consent of the developer, for commercial use under the terms of the covenants. The issue turns on whether plaintiffs' lots are "marked 'A' on the plat" within the meaning of the exception relied upon.

Twelve lots, of approximately ninety-four within the subdivision, are indisputedly designated as "A" on the map. These are lots 1-A and 2-A of block 29 and lots 1-A through 5-A of block 30. These seven lots front on a main thoroughfare designated as Kings Highway. The only other lots in the subdivision which front on this highway, 1 through 9 in block 31, are expressly excepted for commercial use. The remaining five lots clearly designated as "A" are 3-A through 7-A of block 29. These lots are not contiguous with lots 1-A and 2-A of the same block. They front on Ocean Drive which separates them from plaintiff's oceanfront lots. On each of these twelve lots the letter "A" matches in dimension, clarity and whiteness the lot numeral which it attends and compares appropriately in conspicuousness with all other tracings on recorded blueprint.

Of course, this is not the whole story, for if it were, the case would not be here. Plaintiff's lots are 8, 9 and 10 of block 28, which consists of nine lots (8 through 16) on the

ocean side of Ocean Drive. A faint "A" appears to the right of the numeral designating each lot in this block, and similar faint tracings appear on lots 10 through 15 in block 31, facing the inland side of Ocean Drive. Although on close inspection the outline of the letter "A" on each of these fifteen lots is unmistakable, the contrast in their appearance to the bold, clear "A" 's on the twelve lots in blocks 29 and 30 is so great as to negative the belief that they were intended as equivalents.

The record offers a reasonable explanation of this discrepancy which has not been gainsaid. Defendants' expert witness testified that in the blueprinting process the bold, clear white lines result from the opaqueness of the ink with which the engineer's tracings are made, as compared with the translucence of the paper or linen on which they are drawn. An attempt to obliterate part of a tracing, such as a letter, before blueprinting will almost surely leave some of the ink in the fabric, which will retain some opaqueness and result in printing "a little dim white line." It was the expert's opinion that the fifteen lots in blocks 28 and 31 had been designated as "A" lots on the engineer's original tracing, but that these designations had been removed before the controlling blueprint was made. He thus accounted for the attenuated "A" 's on the recorded blueprint. He further testified that the faint "A" 's, which he regarded as defects in the plat, could not have resulted from tampering with the blueprint, because any attempt to erase the letters from it would simply have removed the blue background and left white blurs where the "A" 's had been.

When we add that all of the deeds by the developer conveying the twelve lots in blocks 29 and 30 designated the lots described by numeral and letter, whereas, all of the developer's deeds to the fifteen lots in blocks 28 and 31 designated the lots conveyed by number only, the intent of the developer and of the original purchasers that all lots in

blocks 28 and 31 should be subject to the residential restrictions becomes too clear for argument.

Reversed.

Moss, C. J., and Lewis, Bussey and Littlejohn, JJ., concur.